USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/6/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
BETH SHAK,                                                  :
                                    Plaintiff,              :
                                                            :    18 Civ. 1650 (LGS)
            -against-                                       :
                                                            :    **OPINION AND ORDER**
MARK JAY KRUM,                                              :
                                    Defendant.              :
                                                            :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Beth Shak sues Defendant Mark Krum seeking a declaratory judgment and claiming unjust enrichment in a dispute over attorneys' fees. In response, Defendant filed his Answer, Affirmative Defenses and Counterclaims. Defendant's Counterclaims allege causes of action for breach of contract, quantum meruit, unjust enrichment, breach of the implied duty of good faith and fair dealing, defamation, fraud and civil extortion. Plaintiff moves to dismiss the Counterclaims under Federal Rule of Civil Procedure 12(b)(6). As explained below, the motion is granted except as to Defendant's quantum meruit counterclaim.

## I.  BACKGROUND

The following alleged facts are drawn from the Counterclaims and accepted as true only for purposes of this motion. See *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

Defendant Krum is an attorney specializing in white collar criminal defense and complex civil litigation. On October 27, 2017, Defendant and Plaintiff met on a blind date at the Borgata Casino in Atlantic City, New Jersey. On October 28, 2017, they spent the day together. On October 29, during another date, Plaintiff raised the possibility of making a legal claim for fraud against her estranged husband and asked Defendant to "look into it." Defendant agreed to

investigate as long as Plaintiff agreed that they would end their brief romantic relationship. Plaintiff agreed.

On October 31, 2018, the parties began discussing the scope of the legal representation and terms of payment for Defendant's legal services. Nearly daily from November 1 to November 16, the parties continued discussions about the scope of representation and factual events surrounding Plaintiff's proposed claims against her estranged husband. At a meeting with Defendant on November 1, 2017, Plaintiff "requested that her legal matter be handled as a contingency fee case and told Defendant that she was 'willing to offer [Defendant] fifty percent of any recovery.'" On November 16, the parties entered into a Legal Representation and Fee Agreement ("Agreement") dated November 15, 2017, effective November 3, 2017. The operative provisions of the Agreement state:

> 4. If CLIENT discharges MJK, CLIENT shall pay to MJK . . . all outstanding expenses and costs incurred and a fee computed on a time-expended basis to the date of discharge at MJK's customary hourly rate(s) as set forth below. CLIENT shall pay no attorneys' fees if no monetary recovery is made…
>
> 10. This Agreement is a contingent fee agreement and is not an hourly fee Agreement; however, CLIENT acknowledges that MJK's present hourly rate in non-contingent fee matters is $795.00 as of 01/01/2016 and such rate shall be applicable in the event CLIENT discharges MJK subject to the provisions in this Agreement.

Before Plaintiff signed the Agreement, "at Defendant's request, [Plaintiff] (in the presence of Defendant) again reread the entire four-page Signed Agreement, the entire six-page attachment, and then initialed the first three pages of the Signed Agreement and all six pages of the attachment." On November 22, 2017, Defendant showed Plaintiff a complaint from one of his unrelated cases so that she would "have a good understanding of how much legal work" would go into her Complaint. Defendant told Plaintiff that "he had well over $100,000 of his attorney time into investigating and preparing" the unrelated complaint, and he would "likely

2

have the same amount of attorney time, if not more," in investigating Plaintiff's claims.

From November 1, 2017, through December 15, 2017, Plaintiff sent Defendant over a hundred emails and text messages related to Defendant's representation of Plaintiff. The parties spent "numerous-in person meeting hours" and well over 50 hours on the telephone discussing legal strategy and the possible case against Plaintiff's husband. Between November 24, 2017, and December 14, 2017, Defendant drafted a complaint to commence Plaintiff's action and revised the draft at least six times at Plaintiff's request. On December 15, 2017, the day the parties had agreed to file the complaint, Plaintiff instructed Defendant not to file. From December 15, 2017, to January 2, 2018, Defendant unsuccessfully tried numerous times to reach Plaintiff and find out why she unexpectedly decided not to file the complaint.

Having not heard from Plaintiff, on January 2, 2018, Defendant wrote an email to Plaintiff stating, in part:

> I now believe that you have exercised the discharge provision of our [Agreement] . . . [P]ursuant to paragraphs 4 and 10 of the Agreement you, the Client, are now required to pay me [] all outstanding expenses and costs incurred and a legal fee computed on a time-expended basis to the date of discharge at my[] customary hourly rate of $795 in non-contingent fee matters.

On January 14, Defendant emailed Plaintiff a seven-page invoice for $135,769.18 for legal services through January 2, 2018. In response, Plaintiff sent Defendant an email calling the invoice "outrageous," demanding that he return documents and a $10,000 retainer check and threatening to submit a complaint against Defendant to the bar associations of which he is a member. Following failed negotiations over arbitrating the fee dispute, Plaintiff filed this action against Defendant seeking a declaratory judgment and claiming unjust enrichment.

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Trs. Of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotation marks omitted). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678; *accord Panjiva, Inc. v. United States Customs & Border Prot*., No. 17 Civ. 8269, 2018 WL 4572251, at *2 (S.D.N.Y. Sept. 24, 2018)*.* In assessing the sufficiency of a pleading, a court may consider documents attached to it or incorporated in it by reference. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247–48 (2d Cir. 2017).

New York law applies because the Agreement provides that New York law governs "the performance, interpretation, and enforcement" of the Agreement. (Ex. O at 4). *See Fieger v. Pitney Bowes Credit Corp*., 251 F.3d 386, 393 (2d Cir. 2001) ("a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction.").

## III. DISCUSSION

### A. Breach of Contract

Defendant's breach of contract claim is dismissed because under New York law, the termination of a contingent fee agreement does not give rise to a cause of action for breach of contract. *See King v. Fox*, 851 N.E.2d 1184, 1191 (N.Y. 2006); *accord* Sanna v. Polizzotto, 28 Misc. 3d 1225(A) (Sup. Ct. 2010). "Because of the uniqueness of the attorney-client relationship, traditional contract principles are not always applied to govern disputes between attorneys and clients." *Campagnola v. Mulholland, Minion & Roe*, 555 N.E.2d 611 (N.Y. 1990); *accord Holcombe v. Matsiborchuk*, No. 17 Civ. 2758, 2018 WL 4146623, at *1 (2d Cir. Aug. 29, 2018) (summary order). "Since the client has the absolute right on public policy grounds to terminate the attorney-client relationship at any time without cause," *Demov, Morris, Levin & Shein v. Glantz*, 428 N.E.2d 387, 389 (N.Y. 1981), "the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract, and the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered." *Id; see also King v. Fox*, 851 N.E.2d 1184, 1191 (N.Y. 2006) ("The client may terminate [the contingent fee agreement] at any time, leaving the lawyer no cause of action for breach of contract, only quantum meruit.") (internal quotation marks and citation omitted); *Holcombe*, 2018 WL 4146623, at *1. Accordingly, the breach of contract counterclaim is dismissed.

### B. Quantum Meruit and Unjust Enrichment

Under New York law, quantum meruit and unjust enrichment claims may be considered together as a "single quasi contract claim." *Mid–Hudson Catskill Rural*

*Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citation omitted); *accord Foros Advisors LLC v. Digital Globe, Inc.*, No. 17 Civ. 7514, 2018 WL 4521200, at *7 (S.D.N.Y. Sept. 21, 2018). To recover in quantum meruit, the plaintiff must show "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation and (4) the reasonable value of the services." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000) (applying New York law); *accord Guzik v. Albright*, No. 16 Civ. 2257, 2017 WL 3601244, at *2 (S.D.N.Y. Aug. 21, 2017) (applying New York law).

"[W]here a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available." *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006) (applying New York law); *accord Kramer v. Greene*, 36 N.Y.S.3d 448, 451 (1st Dep't 2016). "New York courts have crafted . . . a specific exception to this general rule, allowing an attorney who is discharged without cause to recover under quantum meruit even when the parties had an otherwise valid agreement covering the same subject matter." *Guzik*, 2017 WL 3601244, at *4; *accord Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004) (applying New York law) ("If the lawyer is discharged without cause and prior to the conclusion of the case . . . he or she may recover . . . in quantum meruit, the fair and reasonable value of the services rendered[.]").

Defendant pleads a sufficient counterclaim for quantum meruit. First, Defendant alleges that he performed services in good faith. Defendant's Counterclaims detail nearly continuous work on Plaintiff's behalf from November 1, 2017, to December 15, 2017. The Counterclaims

allege that based on ongoing in-person, text messages and email conversations with Plaintiff, Defendant prepared at least six drafts of the complaint against Plaintiff's husband.

Second, the Counterclaims plausibly allege that Plaintiff accepted Defendant's legal services. The parties had numerous discussions about the case and Defendant prepared the multiple drafts of the complaint at Plaintiff's request. Plaintiff also does not dispute that she accepted Defendant's legal services.

The Agreement satisfies the third element of "an expectation of compensation." Plaintiff "requested that her legal matter be handled as a contingency fee case and told Defendant that she was 'willing to offer [Defendant] fifty percent of any recovery.'" The parties executed the Agreement, which detailed the contingent fee arrangement as well as the fee agreement in the event Defendant was discharged.

Finally, the Complaint pleads the "reasonable value" of Defendant's legal services by attaching as an Exhibit the invoice sent to Plaintiff on January 14, 2018. The seven-page invoice provides a daily breakdown of Defendant's hours and tasks, totaling 169.10 hours. The invoice states the total value of Defendant's legal services as $134,434.50.

**C. Breach of Implied Duty of Good Faith and Fair Dealing**

The counterclaim for breach of the duty of good faith and fair dealing is dismissed. Under New York law, the implied covenant of good faith and fair dealing "encompasses any promises that a reasonable promisee would understand to be included [in the contract]." *Spinelli v. Nat'l Football League*, No. 17 Civ. 673, 2018 WL 4309351, at *13 (2d Cir. Sept. 11, 2018) (internal quotation marks omitted). New York law does not recognize a separate cause of action for breach of the covenant of good faith and fair dealing when a breach of contract claim based on the same facts is also pled, because the two claims are considered redundant. *See Harris v.*

*Provident Life and Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (applying New York law); *accord Marans v. Intrinsiq Specialty Solutions, Inc.*, No. 18 Civ. 256, 2018 WL 4759772, at * 5 (S.D.N.Y. Sept. 30, 2018). Because Defendant cannot bring a claim for breach of contract, as discussed above, an action for breach of the duty of good faith and fair dealing would not be redundant and might therefore be permissible. *See Dweck Law Firm, L.L.P. v. Mann*, No. 2 Civ. 8481, 2003 WL 22480042, at *5 n. 6 (S.D.N.Y. Nov. 3, 2003) (applying New York law) (although the attorney could not maintain a breach of contract action against client in connection with the retainer agreement, he might be able to maintain an action for breach of covenant of good faith and fair dealing).

The counterclaim is inadequately pleaded, however. It alleges that Plaintiff "intentionally and secretly concealed her intentions" not to prosecute her case against her ex-husband to obtain leverage over her ex-husband in her divorce case. As the Counterclaims allege no facts to support this proposition, the counterclaim is dismissed.

**D. Defamation**

The defamation counterclaim is dismissed. New York law allows recovery for "defamation by proving that the defendant published to a third party a defamatory statement of fact that was false, was made with the applicable level of fault, and either was defamatory per se or caused the plaintiff special harm, so long as the statement was not protected by privilege." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011); *accord Rodriguez v. Daily News, L.P.*, 37 N.Y.S.3d 613, 614 (2d Dep't 2016).

To satisfy the publication element and survive a motion to dismiss, Defendant must identify a third party to whom the defamatory statement was allegedly published. *See Blige v. City Univ. of New York*, No. 115 Civ. 08873, 2017 WL 498580, at *11 (S.D.N.Y. Jan. 19, 2017)

(applying New York law) (dismissing a defamation claim where plaintiff failed to identify who made the defamatory remarks and to whom the comments were made); *accord Camp Summit of Summitville, Inc. v. Visinski*, No. 06 Civ. 4994, 2007 WL 1152894, at *10 (S.D.N.Y. Apr. 16, 2007) (To establish a claim for defamation, "a pleading is only sufficient if it adequately identifies. . . . to whom the statement was communicated.").

Defendant points to two statements to support his defamation claim. First, Defendant claims that the January 15, 2018, email from Plaintiff to Defendant is defamatory. This claim fails because the Complaint does not sufficiently allege that the contents of the email were published to a third party. Rather, the email is a private communication between the parties. While Defendant claims that "discovery will produce evidence" that Plaintiff published the contents of the email to at least two individuals, Defendant's conclusory statement in his memorandum of law is insufficient to support a claim for defamation. To satisfy the publication element and survive a motion to dismiss, the counterclaim must identify a third party to whom the defamatory statement was allegedly communicated. *See Blige*, 2017 WL 498580, at *11.

The second allegedly defamatory statement appears in the Complaint itself, a document prepared in the course of litigation and filed with the Court. "[I]t is well-settled that statements made in the course of litigation are entitled to absolute privilege. . . ." *Front, Inc. v. Khalil*, 28 N.E.3d 15, 18 (N.Y. 2015); *accord Feist v. Paxfire, Inc.*, No. 11 Civ. 5436, 2017 WL 177652, at *4 (S.D.N.Y. Jan. 17, 2017) (applying New York law). The defamation counterclaim is dismissed.

### E. Common Law Fraud

The common law fraud counterclaim is dismissed because the alleged fraud is not pleaded with specificity. For claims sounding in fraud in federal court, Rule 9(b) requires that "a

9

party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017). "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), but still "must be alleged plausibly in accordance with Rule 8." *Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015); *accord Price*, 2017 WL 4480887, at *2. "[A]llegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Chorches*, 865 F.3d at 81–82 (internal quotation marks omitted).

Defendant speculates that Plaintiff "had no intention of litigating her civil fraud claims against [her husband]," and that Plaintiff "wanted the benefit of having Defendant prepare and fully research a civil case against [her husband] so she could have leverage for a more favorable settlement in her New York Divorce Case." The Counterclaims allege no facts to support this allegation. The Counterclaims similarly plead no facts to support the inference that Plaintiff's many statements to Defendant were false when made. The fraud claim is dismissed because it does not satisfy the particularity requirements of Rule 9(b).

**F. Civil Extortion**

Defendant's claim for civil extortion is dismissed because civil extortion is not a recognized cause of action under New York law. *See Caro v. Fid. Brokerage Servs.*, No. 14 Civ. 1028, 2015 WL 1975463, at *40 (D. Conn. Apr. 30, 2015) (dismissing claims for civil extortion

10

because "civil extortion is not a cognizable cause of action under New York law."); *Kearney v. Kozloski*, No. 14 Civ. 1446, 2015 WL 500477, at *6 (N.D.N.Y. Feb. 3, 2015) (denying leave to amend plaintiff's civil extortion claim because plaintiff's "civil extortion claim is not cognizable under either New York or federal law").

### G. Violation of Rule 8

Plaintiff argues that Defendant's Counterclaims should be dismissed in their entirety pursuant to Federal Rule of Civil Procedure 8. Rule 8 requires pleadings to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995); *accord Bryan v. New York*, No. 14 Civ. 8305, 2015 WL 4272054, at *1 (S.D.N.Y. July 13, 2015). Dismissal for a Rule 8 violation "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons*, 49 F.3d at 87 (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988)); *accord Bryan*, 2015 WL 4272054, at *1.

While Plaintiff is correct that the Counterclaims are unnecessarily long and detailed, they are not as a whole "so confused, ambiguous, vague, or otherwise unintelligible" that the claims are otherwise "disguised." *See Simmons*, 49 F.3d at 87. They provide a coherent narrative of the alleged events and describe the extent of Defendant's legal representation of Plaintiff. The motion to dismiss the Counterclaims based on Rule 8 is denied.

11

**H. Request to Strike Pursuant to Rule 12(f)**

The Court defers to Magistrate Judge Cott with respect to Plaintiff's request to strike certain Counterclaim allegations and any outstanding requests to seal or file with redactions.

**I. Leave to Replead**

Defendant asks, in the event of dismissal, for leave to file Amended Counterclaims. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). "However, where the [party] is unable to demonstrate that he would be able to amend his [counterclaims] in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2017 WL 1133446, at *7 (S.D.N.Y. Mar. 24, 2017). Leave to amend the counterclaims also may be denied where the Defendant "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Any application for leave to replead shall be made as provided below.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's Counterclaims is GRANTED as to all Counterclaims except the quantum meruit counterclaim.

Should Defendant wish to replead, he shall file within 21 days a red-lined version of a proposed amended answer and counterclaims, showing changes from the current Answer and Counterclaims, together with a letter not to exceed three pages explaining how the legal

deficiencies identified in this Opinion have been cured, and stating how the repleaded counterclaims would augment the damages to which he may be entitled under the surviving quantum meruit counterclaim. No pre-motion conference is necessary.

Dated: November 6, 2018
      New York, New York

                                      **LORNA G. SCHOFIELD**
                                **UNITED STATES DISTRICT JUDGE**